Good morning, your honors. My name is Clint Robison and I represent Barrett Business Services, Inc., the appellant in the matter of Kempf v. Barrett Business Services, Inc., and I wish to reserve two minutes for rebuttal. Can you hold on for just one second? Yes. Mr. Clausen, you may want to move over one chair. I noticed the lawyer in the last case was sort of straining his neck to see what the reaction of the panel was, and you're perfectly entitled to see that. Thank you. Barrett, ahead. May it please the Court. Firstly, reversal of the Court's judgment is warranted due to the error in the proceedings. Specifically, there was an error of improperly excluding critical evidence affecting a substantial right of the appellant, thus resulting in prejudice. That right was the ability to amount a complete affirmative defense, the Fifth Affirmative Defense, of unclean hands. Appellee does not dispute the application of the Obrey test with respect to prejudice. Rather, at page 22 of his brief, appellee effectively concedes that this reviewing court must, and I underline must, find prejudice unless the appellee can meet its burden to show that it is more probable than not. Why don't we talk about the witnesses and why they were excluded and why you think that was wrong. And what they would have testified to. Yes, of course. I'll be happy to. With respect to the particular witnesses, we can move to initially Mr. Gerritsen. Okay. The exclusion of Mr. Gerritsen is based on a discovery sanction, correct? Correct, Your Honor. And I wish to raise four points. First, Mr. Gerritsen authored. I think you'll do a lot. You may not have argued before here a lot, but reading from a prepared argument is not going to be particularly helpful. Tell us in a nutshell why it was wrong to exclude Gerritsen and why it wasn't a proper exercise of the discovery sanction. It was not an appropriate exercise of the discovery sanction because Mr. Gerritsen was prepared to testify to the core elements of one of the key documents in the case. Was he disclosed? He was disclosed, Your Honor. He was disclosed in a supplemental, a supplemental disclosure. And 18 days before trial. Correct. And he was also disclosed with respect to, in the case of the discovery sanction, there is a, with respect to the discovery sanction, as the courts know, there is a five-part test that the court would apply with respect to the appropriateness of the discovery sanction. And with respect to those five parts, number one, the, one of the claims is that they're We'll start with this. He wasn't disclosed in the, by the witness disclosure deadline, correct? Correct. Okay. He wasn't deposed? No discovery was conducted by plaintiff of any kind in this case. He wasn't deposed. We can spend your time wherever way you want. The record is the record. You can either argue with it or agree with it. He wasn't disclosed by the deadline, correct? Correct. He wasn't deposed? Correct. And because he wasn't identified, plaintiff didn't have the One other thing. I don't know that I would agree with that, but that's plaintiff's contention. Isn't that the purpose of disclosing who your trial witnesses are going to be? Yes, Your Honor, but as we indicated to the court, the, the discovery of, the document that was at issue that the witness was going to testify about is a blank document that has no authorship, it has no document number, it has no indication of who it's from. And so the document that was on your exhibit list? Yes, Your Honor. How did you plan on authenticating it without Gerritsen? It was stipulated to, Your Honor. How are you going to provide the content without Gerritsen? Well, that was our intent, was to provide Gerritsen once we discovered who it was that had authored it, but initially. What was the relationship between the disclosure deadline of witnesses and the close of discovery? There was approximately a 20-day period in between those two. So there was a, following the, the, arguably the last opportunity to disclose witnesses, there was 20 days, so if plaintiff wanted to look at the, your witness list and say, I'd like to depose Jane Doe, that was that opportunity? I believe that's right, Your Honor. After that 20-day period closed, how long after that was Gerritsen disclosed? Oh, I see. I misunderstood your question. The, it was 20 days before the, the trial date that he was, that he was disclosed, the date that the documents were. Okay. When did discovery close? How many days before trial? I'm not sure what date the, perhaps plaintiff can tell us that. When, when his, his chance to argue. When he's up. You go ahead. When I ask, at what point did you claim that Gerritsen was really a rebuttal witness? Gerritsen was a, was a witness in our case in chief with respect to the notion that he would address the content and the meaning of Exhibit 609. My question was, when did you claim that he was going to be a rebuttal witness? I don't believe we ever claimed that he was specifically a rebuttal witness, Your Honor. We never claimed that. Correct. How about impeachment witness? Your Honor, we did indicate that he would serve in part as an impeachment witness with respect to statements made by. In part, but you just said earlier that you were going to use him in your case in chief. Correct. He also had functions. If you're going to use him in your case in chief, he's not just simply a, a, an impeachment witness. Well, he was going to testify to several things once Mr. Kempf got up and testified on the stand about the issues that were set, that were at. I guess my point is that if he is going to be used in your case in chief, he's not just an impeachment witness. So you have to disclose him. I agree. And that's why we discovered that he was applicable to the particular document. Otherwise, we didn't really have a reason to. Why, why was he so long in finding out that he was the one? He was your man. There was an ongoing investigation with respect to trying to find the author of this, of this particular document. And, um. He was the branch manager of the place where the plaintiff worked, wasn't he? That's branch manager. And so, um, there were inquiries of, of every employee that worked at that branch and nobody could determine or figure out who had authored that document. Okay. Just so I'm clear in my mind, was Garrison disclosed before or after the close of discovery? He was disclosed after the close of discovery. Okay. Now, how about Cinny? That was the other witness that was excluded? Correct. Cinny was excluded on the grounds of relevance, which was really, uh, more of a, an indication by the court that it was a cumulative issue, that he, uh, would represent testimony that would be, that would be cumulative. Um. What would the relevant testimony have been from Cinny? Mr. Cinny would have testified about the operations of, uh, a branch, how the operations work and how those operations are affected by the, uh, the worker's compensation adjustment that's at issue in this particular case. Did that come in through other witnesses? It came in through other witnesses, but not specifically the, the impact on the particular branches from the branch level. In other words, the people that testified before was, I believe, a CFO and a COO who were sort of broad, high-level people. So this would have been a branch manager who was, uh, at that branch level and had direct experience with the application of the, uh, of the calculations and the worker's compensation in question. So that would have been the relevance of it. And he was, uh, he was listed on the witness list. There was information on the witness list that said exactly that, that it would have gone to operations, it would have gone to branch, uh, calculations. Uh, and so that was all provided. And I thought your brief argued that Cinny was going to testify about unclean hands. Uh, that all goes to unclean hands. How that worker's compensation is essential to understanding the nature of the unclean hands. Did you ever, in front of Judge Conte, use the words unclean hands in describing Cinny's proposed testimony? No, your Honor, we did not. Uh, and I believe that under the, I believe it's F, the, uh, FRE 103 that, and the case law that we wouldn't necessarily be required to say it specifically goes to unclean hands, but he was going to unclean hands and those things that we discussed. Do you regularly practice in Los Angeles? Yes, your Honor. Have you appeared before Judge Conte before? Uh, no, your Honor. Stipulated to a bench trial? Yes, your Honor. Did he ever indicate at any time during the pretrial proceedings that any of his deadlines were sort of aspirational in nature? No, your Honor. He's pretty much by the rules kind of judge, isn't he? Yes, that's correct. Okay. With respect to, with respect to, uh, the other witness that issue is Mr. Vaughn. Uh, the court specifically relied on, in its statement of decision, on Mr. Vaughn's testimony, uh, and in the manner in which it particularly characterized it, uh, we would submit is clearly erroneous. In the statement of decision, the court said that it was, uh, there was insufficient evidence of unclean hands because of two things, testimony of Mr. Elitch and the testimony of Mr. Vaughn. Those are the only two things that were cited. Uh, the particular statement attributed to Mr. Vaughn is not an accurate reflection of his testimony. Mr. Vaughn actually specifically testified that had Mr. uh, Kempf, the appellee, in fact, made the, failed to disclose the workers' compensation losses, that his bonus would, in fact, have been specifically affected. And Mr. Kempf agreed on the stand that if, in fact, the, uh, those workers' compensation losses had not been reported, that it would amount to bad faith. He agreed to that. And that is the essence of what unclean hands is. So the missing link is, you've got Mr. Vaughn saying that this is how it would work, and you've got this document that says this is what happened, and then there was this exclusion of, uh, Mr., Mr. Garretson to close, to, to link the two things, to say, aha, this is what happened. You agreed that if this happened, then, in fact, you wouldn't be entitled to any money. There wouldn't even be a lawsuit. How were, excuse me. When we're looking at unclean hands, it's a very high standard. It has to be unconscionable, it has to be in bad faith, it has to be inequitable. Now, does your evidence meet those standards? Our point is that it does, in part, and that Mr. Kempf testified that had these events occurred, it would have constituted bad faith, that's his testimony. Number two, our contention is that we were deprived of providing that piece of evidence in the form of Mr. Garretson's testimony that would have shown the dynamics and the specific information based on his investigation and would have expounded on Exhibit 609. And when Exhibit 609 was admitted, it was admitted with a statement that said, I don't even know about the relevance of this, and I'm going to look at this skeptically. And then, that was coupled with a ruling that is clearly erroneous that says, you can't even use the unclean hands defense. So, you put all those things. That wasn't a ruling, was it? That was the court statement, and that was. But it's a statement, early on, but there was never a ruling. There was not an official ruling, but the court had made its intent known to all the parties that it did not intend to apply the unclean hands defense. Well, I didn't think that that's the usual way for unclean hands, that usually it's an equity matter. But that wasn't a ruling. I'm going to exclude anything having to do with it or not think about it in the case. Right. And then, we would submit that that's a self-fulfilling prophecy. The judge said, here's how I feel about this. He then excludes the key witnesses that relate to that, and then says there's insufficient evidence to prove it. So, we even cited the case law, at the time, about why unclean hands was applicable, and that was then ignored during the time that we were trying to present the witnesses. And then, the ruling is that there's insufficient evidence. You're down to about 30 seconds. You want to save it for rebuttal? Yes, Your Honor. Okay. Thank you for your argument. Thank you. We'll hear from the appellee now. Mr. Klaassen? Good morning, Your Honors. I'm going to address, first, the testimony of Mr. Sinney. The offer of proof that was given at trial was, he's going to testify as to his understanding of how it is that these, the 30-20 and the 80-20, work with respect to a branch manager. And then, counsel went on to say, we've heard from the corporate people on that. Now we have a branch manager who is in a position similar to Mr. Kempf, who can explain what the effect on him was. There's nothing in there that even remotely suggests that he's going to testify to the unclean hands defense. He's talking about testifying to how these formulas work with respect to any branch manager. And the unclean hands defense, obviously, has to be specific to Mr. Kempf. It's a defense that involves proving Mr. Kempf's, not only his bad conduct, but his state of mind when he committed that alleged conduct. There's no indication, there was no hint at any time during trial that Mr. Sinney would testify to that. Even if we assume that this offer of proof was valid with respect to testimony as to how these formulas work, number one, Barrett won on the 30-20 calculation. The court disallowed it. Secondly, with respect to the 80-20 calculation, that's the one that concerns the workers' comp claims, the court ruled that the plaintiff was entitled to his bonus because that could not be applied retroactively. It had nothing to do with how it worked. So even if we assume that offer of proof was valid and that the testimony was relevant and was improperly excluded, there's no prejudice. Secondly, with regard to the testimony of Mr. Gerritsen, which of course was excluded under the Rule 26 failure to disclose, and I have to say, I don't know what the wind discovery cutoff was. I'm assuming that it could be somewhere in the docket if there's a scheduling order or something to that effect, and I don't know. If it's not there, it certainly was not in the record that was before the judge at the time of trial, and by that I mean it was not in the transcript. There was a discovery cutoff date, I take it. Well, I'm assuming there was because there was a statement made, and I believe it was made by plaintiff's counsel at the time this issue came up, that Mr. Gerritsen was disclosed after discovery cutoff. That was a representation of counsel. It was not disputed by defense counsel. Did you try the case? No. Okay. No. You want to talk about Vaughan? Yes. I will talk about Mr. Vaughan. The testimony that Mr. Vaughan gave was basically that if a manager was doing the best that he could or working to the best of his ability, there was nothing that he could do to change the outcome with regard to the workers' comp deduction and, ergo, the profitability of the branch and therefore the size of the bonus. What the court said in summarizing this testimony, and I want to emphasize that Mr. Vaughan was talking, again, hypothetically about any manager, not about Mr. Kempf specifically. What the court said was at trial Vaughan testified that there was nothing Kempf could do or could have done to change the workers' compensation adjustment or its effect on Kempf's bonus. And I did not make this argument in the brief because it just occurred to me as I was going over the briefs, but I think you could even read that as including an implicit finding by the court that Kempf didn't do anything wrong, that Kempf did not engage in unclean hands, which, in fact, was the court's finding. So if we ‑‑ in other words, if I found that Mr. Kempf did not engage in any misconduct, then when I apply Mr. Vaughan's statement to that conduct, I'm saying he did work to the best of his ability, and therefore there was nothing he could do to change the outcome. But even if we assume the construction that the defense wishes to give that finding by the court, the judge found that all of the evidence either failed to support or, in fact, undermined the unclean hands defense. And that evidence included the testimony of Mr. Elick, who was Mr. Kempf's supervisor, and he said that he had not committed any misconduct. And there was absolutely no evidence that Mr. Kempf had, in fact, committed conduct. There was speculative or hypothetical testimony to the effect that it could be done by failing to report workers' compensation claims timely, but there was never any evidence that Mr. Kempf had, in fact, failed to report those compensation claims timely. There was some evidence, it was a little bit vague, but there was some evidence that maybe some workers' compensation claims had, in fact, not been reported timely, but the testimony was that Mr. Kempf was not the only person at that branch who would take the phone call when a report of a workers' compensation claim came in. And we have no way of knowing whether the ones that were reported in an untimely fashion were in fact reported to Mr. Kempf, and secondly, even if they were, we have no way of knowing, and there was no proof at all, even remotely relevant to this, no way of knowing whether or not he did that on purpose. In other words, whether he did it with unclean hands or whether he simply forgot or whether it got lost in the shuffle. Judge Conte did make a determination that this bonus reduction was not wages within the meaning of the statute, correct? I think he made the opposite conclusion. I think initially he did not make that finding, and then there was a motion to amend by the plaintiff. And he found that it was wages? Yes, and came under the statute. And is there any further questions? I don't see any. Thank you for your argument. I appreciate you coming in today. Rebuttal, you have about half a minute, counsel. Thank you, Your Honor. It's the, it is undisputed that Plaintiff's counsel or the plaintiff's counsel, the plaintiff's counsel, had to satisfy the Obre test, meaning that they have to show that it is more probable than not, that had the evidence been admitted that is at issue, that the outcome would not have been different. The point that was raised by Appellee's counsel is simply what's on appeal now, that that should have been submitted, and it's our contention that the state of mind as to why it was not submitted is contained in the statements by the judge about the case. Thank you for your argument. The case, as argued, will be submitted for decision.
judges: Hug, Fletcher B. , Hawkins